FEDERAL INTERMEDIATE CREDIT BANK, Appellant, v.
LOSING, et al, Respondents (and five other cases).

(232 N. W. 17.)

(File Nos. 6416-6427.   Opinion filed September 2, 1930.)

*H. G. Giddings,* of Mitchell, and *E. F. Dougherty, Byron B. Oberst,* and *L. N. Burch,* all of Omaha, Neb., for Appellant.

*Gardner & Churchill,* of Huron, and *Jerry Lammers,* of Wessington Springs, for Respondents.

BROWN, P. J. Plaintiff commenced six separate actions upon promissory notes given by six different persons. The six actions were consolidated for purposes of trial in the circuit court, and from judgments in favor of the several defendants and orders denying new trials in each of the cases plaintiff appeals.

■ Standard Cattle Corporation was incorporated for the purpose of making loans to farmers and rediscounting the paper to plaintiff, Federal Intermediate Credit Bank of Omaha. The several defendants executed to Standard Cattle Corporation their promissory notes upon which the actions are based. The provisions of the several notes were identical except as to date and amount. The note of defendant Kleppin was dated December 5, 1923, due September 5, 1924, for the sum of $7,000 with interest at 7 per cent per annum payable annually, both principal and interest to bear interest after due at 10 per cent per annum payable annually. The other notes were dated on different days in December, 1923, and were due on the corresponding day in September, 1924. Losing's was for $3,000, Hinrichs' for $1,000, Henderson's for $1,000, Winter's for $2,000, and Bessey's for $2,000. All of the notes were secured by chattel mortgages on live stock, and the notes were indorsed by Standard Cattle Corporation, the payee, and transmitted to plaintiff for discount, or "rediscount," as it is sometimes stated in the briefs. Other paper had been at other times transmitted for like purposes by Standard Cattle Corporation. On January 14, 1924, plaintiff transmitted to Wessington Springs State Bank its check for $49,608.25 payable to the order of Standard Cattle Corporation, to be delivered to that corporation when the

chattel mortgages securing the notes covered by the remittance were shown to be first liens on the property described in the several mortgages, and within a day or two after the receipt of the check by Wessington Springs State Bank it was turned over to Standard Cattle Corporation. Remittance for the Kleppin note was included in this $49,608.25, but no payment for any of the other notes was included in this remittance, nor was payment for any of the other notes ever made by or on behalf of plaintiff. Plaintiff bases its right to recover upon those other notes upon a claim that they were hypothecated with plaintiff as collateral security for any contingent liability of Standard Cattle Corporation on its indorsement of any and all notes transferred by it to plaintiff. The notes in suit other than Kleppin's were all sent in to plaintiff on January 10, 1924, with a letter stating that they were being sent in for rediscount, and on January 12th plaintiff acknowledged their receipt "for rediscount," stating that they would have attention with the least possible delay, and the makers of these notes never agreed or consented that they should be put up as collateral security for any obligations of the Standard Cattle Corporation. The notes were made for the purpose of borrowing money, and it was understood and agreed by the Standard Cattle Corporation and the several makers of these notes that they would be transmitted for "rediscount" to plaintiff, and if accepted the makers would be paid the amount of their several notes when plaintiff remitted for them, and if they were not discounted by plaintiff, the notes and mortgages securing them would be returned to the makers. On December 26, 1923, plaintiff had written Standard Cattle Corporation suggesting that it loan its capital stock to farmers and forward to plaintiff the notes taken therefor, as additional security, in reply to which on January 2, 1924, Standard Cattle Corporation wrote plaintiff that this matter had been discussed with the board of directors and met with their approval. On January 17, 1924, the secretary of the Standard Cattle Corporation wrote plaintiff that instead of getting as additional security notes taken for capital stock loaned, plaintiff was "authorized to use any eligible paper which you have from this corporation and hold the same for the capital stock." Plaintiff's manager testified that in response to this letter plaintiff advised the cattle corporation that it would hold as such collateral security the notes of

Bessey, Henderson, Losing, Winter, George Hinrichs, and a note of John Hinrichs for $1,000, making altogether $10,000, which was the amount of capital stock of the cattle corporation claimed by it to have been paid in. Along with the Losing note and mortgage there was transmitted to plaintiff a printed receipt which it had prepared for borrowers to sign, reading, in substance, "My occupation is a farmer; I reside upon Section ———, Township ———, Range ———, County of ———, State of South Dakota. I am the maker of the following described negotiable note" (here follows a description of the note). "I received the amount of money named in this note from Standard Cattle Corporation. The money derived from this note was in the first instance used by me for the following purposes, general agricultural purposes." Signed, Peter Losing. Similar receipts were signed by the makers of the other notes and sent in to plaintiff, but Hinrichs' receipt recited that he had received the amount of money named in the note from ———, as did also Henderson's receipt, and Winter's recited that he had received the amount of money named in his note from Wessington Springs State Bank. F. E. Pool, secretary and treasurer of Standard Cattle Corporation, testified that in December, 1923, he was at Omaha and there had a talk with F. W. Clark, manager of plaintiff bank, in regard to the paper Standard Cattle Corporation intended to send in for discount to plaintiff, and that in that conversation he told Mr. Clark that Standard Cattle Corporation had no cash capital of its own and no money to be used in the first instance for advancing to borrowers or for paying off chattel mortgages on property owned by borrowers in order to make the mortgages securing notes offered for discount to plaintiff first liens on the property; that Standard Cattle Corporation could advance no money to the makers of such notes until it received the money from the Intermediate Credit Corporation. Clark denied that he had ever told Pool that the proceeds of discounted paper might be used to pay mortgages which were prior to the lien of the mortgage securing the discounts; that in accepting the notes sued on he had no knowledge that the several makers thereof had not received the money on their notes, and that he believed Standard Cattle Corporation had a paid-in capital of $10,000, as a statement to that effect had been sent to him by Standard Cattle Corporation and he had also received two deposit slips, one showing a deposit

of $2,000 in Farmers' Savings Bank and the other a deposit of $8,000 in Wessington Springs State Bank. Pool testified that these deposit slips were issued at the instigation of Mr. Tilgner, a representative of plaintiff who knew at the time that Standard Cattle Corporation had no money on deposit in either bank; that he and Tilgner had been driving over the country getting applications for loans, and the formation of Standard Cattle Corporation was talked of between them, and it was understood by Tilgner that Standard Cattle Corporation would take capital stock notes from the applicants for 10 per cent of the amount of the loans they should get. In view of the conflict in the testimony as to whether plaintiff had notice that the notes in suit other than Kleppin's note were given without consideration, and that the makers were to get their notes returned if they were not discounted by plaintiff and the proceeds remitted by plaintiff for the makers, we cannot say that the findings of the court that plaintiff had such notice is not supported by the evidence. The findings and judgment of the court as to all of the notes in suit other than that of Kleppin's should be affirmed.

■ The findings and judgment as to the Kleppin note require further consideration. The court found that Kleppin had never received any consideration or thing of value for said note and mortgage either from plaintiff or from Standard Cattle Corporation or from any one else, and that Standard Cattle Corporation never received any consideration or thing of value for either said note or mortgage from plaintiff or from any one else, and that plaintiff never paid any consideration or thing of value to Standard Cattle Corporation or to Kleppin or to any one else for said note or mortgage, and that plaintiff never purchased the note or mortgage at all. It is difficult to understand upon what theory these findings were made. Kleppin himself testified that he executed the note and mortgage and left them with Mr. Pool for the purpose of getting a loan, that he knew they were to be negotiated through plaintiff bank, that the money was not to be paid to him but to either Standard Cattle Corporation or Farmers' Savings Bank for him, and that either the bank or Standard Cattle Corporation was to apply the money on the existing notes and mortgages which he owed. It is undisputed that Pool on behalf of Standard Cattle Corporation transmitted the note along with others to plaintiff for discount, and that plaintiff transmitted to Wessington Springs State

Bank on January 14, 1924, a check or draft for $49,608.25 in payment for loans enumerated in a memorandum inclosed, among which enumerated notes was that of Kleppin. With the draft was a letter to Wessington Springs State Bank stating that the funds were to be made available to Standard Cattle Corporation upon it furnishing abstracts of chattel mortgages securing each note, showing the mortgages to be first liens against the property described in the mortgages. Pool testified that the draft was given to him by Vessey, cashier of Wessington Springs State Bank, prior to January 19, 1924, and was by him indorsed, "Standard Cattle Corporation, By F. E. Pool, Sec. Treas.," and deposited by him in Farmers' Savings Bank in Wessington Springs to the account of Standard Cattle Corporation. He testified that Kleppin never got any of the money, and that the reason for this was that releases of existing mortgages on Kleppin's property had never been received and so the money had not been applied in payment of the notes secured by those mortgages. The record does not disclose why Wessington Springs State Bank delivered the draft to Standard Cattle Corporation when the company had not procured releases of the existing mortgages on Kleppin's property. But at all events the draft, which included remittance for the amount of Kleppin's note, was delivered to Standard Cattle Corporation, a party to whom Kleppin himself testified the money to be received from plaintiff for his note was to be paid for him. It seems clear from the undisputed evidence in the case that plaintiff purchased the Kleppin note and paid full value for it, and that this payment was made to Standard Cattle Corporation which was the agent of Kleppin to receive such payment, 2 C. J. 447, and the Kleppin note when negotiated to plaintiff was indorsed by Standard Cattle Corporation by an officer duly authorized to make such indorsement. Findings and judgment should therefore have been in favor of plaintiff against both Kleppin and Standard Cattle Corporation for the amount due on the Kleppin note.

The judgment and order appealed from are affirmed as to Losing, Hinrichs, Bessey, Henderson, and Winter, and reversed as to defendants Kleppin and Standard Cattle Corporation on the cause of action on the Kleppin note, and the cause is remanded for further proceedings in conformity to this opinion. Defendants Losing, Hinrichs, Bessey, Henderson, and Winters are

entitled to costs on this appeal. The brief on behalf of appellant is so inadequately indexed as to have very greatly increased the work of the court in disposing of the case. More than eighty exhibits were introduced, and most of them referred to in the brief on this appeal, and there is no index of exhibits whatever. These exhibits were not introduced on the trial or referred to in the brief of appellant either in chronological order or in numerical order. An index of exhibits should contain not only the number or letter designation of the exhibit, but also a brief statement of what the exhibit is; for example, if the exhibit is a letter the index should state by and to whom it is sent and its date. The rules of this court require that a brief containing an abstract of the record must be accompanied by a complete index of the contents of such abstract. For failure of appellant to comply with this rule no costs will be allowed the appellant on this appeal.

POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.

BURCH, J., not participating.